**CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND**
41605 Courthouse Drive PO Box 676, Leonardtown, Maryland, 20650
Main: 301-475-7844
Civil Dept.: Ext. 4562
Criminal/Juvenile/Jury Dept.: Ext. 4564
Case Management Office: Ext. 4101/4102
MD Toll Free: 800-988-5052
MD Relay Service: 711

|  |  |
|---|---|
| Case Number: | C-18-CV-25-000599 |
| Other Reference Number(s): | |

**ILANA ABRAHAM VS. ST. MARY S HOSPITAL OF ST. MARY S COUNTY, INC.**

## CERTIFICATION OF TRUE COPY

I HEREBY CERTIFY that I am authorized to make this certification, and that the attached is a true copy of: Entire Case Record For Case Number C-18-cv-25-000599 taken from the records of above court in the above entitled case.

IN TESTIMONY WHEREOF I hereto set my hand and affix the seal of the Circuit Court of Maryland for St. Mary's County on this 10/23/2025.

Debra J. Burch
Clerk of the Circuit Court



E-FILED; Saint Mary's Circuit Court
Docket: 9/22/2025 10:12 AM; Submission: 9/22/2025 10:12 AM
Envelope: 23026143

## IN THE CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND

| | |
|---|---|
| ILANA ABRAHAM, *an individual, and on behalf of all others similarly situated.* <br><br> c/o Lexero Law <br> 80 M St SE Ste 100 <br> Washington, DC 20003 <br><br> v. <br><br> ST. MARY'S HOSPITAL OF ST. MARY'S COUNTY, INC. <br> 25500 Point Lookout Rd. <br> Leonardtown, MD 20650 <br><br> *Serve*: <br> The Corporation Trust Incorporated <br> 2405 York Road Suite 201 <br> Lutherville Timonium, MD 21093-2264 | Case No: C-18-CV-25-000599 <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Ilana Abraham, an individual ("Abraham" or "Plaintiff"), on behalf of herself and others similarly situated, by and through undersigned counsel, sues Defendant, St. Mary's Hospital of St. Mary's County, Inc. ("St. Mary's Hospital" or "SMH" or "Defendant") and states as follows:

1.      This class action seeks monetary and injunctive relief to redress injuries resulting from Defendant's negligence and wrongful acts related to a computer data breach that exposed the personal data of individuals who were patients of SMH.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action as the amount in controversy exceeds $25,000, exclusive of interest and costs, and the relief sought includes equitable, declaratory, and injunctive relief for which the Circuit Court has exclusive jurisdiction.

3.      This Court has personal jurisdiction over the present matter because Defendant contracted to provide services in Maryland, or regularly conducts business in Maryland.

4.      Maryland is also where a substantial portion of the events or omissions giving rise to this claim occurred and where a substantial portion of the property that is the subject of this action is situated.

5.      This Court has personal jurisdiction over the present matter because Defendant's principal place of business is located in St. Mary's County with its main address as 25500 Point Lookout Rd. Leonardtown, MD 20650.

## FACTUAL BACKGROUND

### Defendant SMH

6.      SMH, founded in 1912, is a full-service hospital located in Leonardtown, MD.

7.      "Personal Information" ("PI") is defined under Maryland's Personal Information Privacy Act §14–3501(e)(1).

8.      On information and belief, Defendant regularly collects and stores a wide variety of PI from its customers and prospective customers.

9.      On information and belief, PI collected by SMH regularly includes patient name, social security number, driver's license numbers, dates of birth, treating physician, dates of service, medication information, insurance information and treatment and/or diagnostic information.

10.     As a hospital that provides medical services, Defendant is part of the health care industry.

11.     The Joint Commission, the main U.S. accrediting body for hospitals, has advised that "It's critical that healthcare organizations do all they can to prevent a cyberattack, such as decreasing access points for penetration, removing devices with old or obsolete operating systems,

and training and testing staff to decrease vulnerability to phishing." *See* Sentinel Event Alert, *available*                                                                                   *at* https://digitalassets.jointcommission.org/api/public/content/8bd6addf4df943f383a074f2d9d4af6, last visited September 17, 2025.

12.    The American Hospital Association recently noted that there were "hacking incidents targeting non-hospital health care providers, including third-party service and software providers." *See* AHA Statement to Senate HELP Committee on Cybersecurity, *available at* https://www.aha.org/testimony/2025-07-09-aha-statement-senate-help-committee-cybersecurity, last visited September 17, 2025.

**The Data Breach**

13.    Plaintiff was a patient with SMH and entrusted Defendant with her PI.

14.    On information and belief, SMH did not place sufficient priority on cybersecurity or maintaining privacy of their patients' PI.

15.    At all times material hereto, Plaintiff's PI was stored on SMH's computer network and/or its related cloud-based network, which may or may not have been hosted or administered by a third-party IT vendor.

16.    Plaintiff received a letter from SMH dated August 1, containing information about a security breach of a computer network containing Plaintiff's PI. *See* Exhibit #1.

17.    In sum, Defendant suffered from a breach in their computer network security or a third party's computer network security that had affected the privacy and PI of Plaintiff and numerous other persons.

18.    As a result of the breach, the PI of Plaintiff was accessed and disclosed in an unauthorized manner.

3

19. SMH did not reveal what actions were taken by the unauthorized actor during the time they had access to SMH's or the third party's network.

20. SMH did not reasonably explain the delay in notification to those affected.

21. SMH's breach notification provided no information as to who was suspected of being the source of the breach or what specific failure there was in their security architecture, network, policy, or procedures, or the third party's computer network security architecture, network, policy, or procedures.

22. SMH's breach notification provided no specific details as to what technical measures were taken to secure their network.

23. SMH's breach notification provided no details as to the additional security measures and training they have undertaken to prevent such future incidents.

24. On information and belief, the integrity of SMH's entire computer network, or the integrity of the third-party's computer network, was compromised as a result of this breach incident.

25. On information and belief, the confidentiality of all information on SMH's computer network, or the integrity of the third-party's computer network, was compromised based on this breach incident.

26. On information and belief, most, if not all, of SMH's patients had their PI and medical records exposed as a result of this breach.

27. On information and belief, data present on SMH's network, or the third party's network, including PI of current and former patients, was copied, downloaded and exfiltrated by criminal actors during the time they had unauthorized access.

28. On information and belief, the compromised PI of current and former patients

4

remains in the hands of criminal actors that breached SMH's network.

### SMH's Selection of Third Party IT Vendors

29.    On information and belief, SMH maintained complete authority to research, select, and retain its third-party IT vendors.

30.    SMH contracted with third-party IT vendors on its own accord and selected third-party IT vendors after considering a variety of other merchants that may have met SMH's business needs.

31.    SMH's failure to select a vendor that sufficiently met cybersecurity standards properly protected patient data was negligent.

### Failures to Secure Data and Manage the Resulting Data Breach

32.    On information and belief, the information accessed without authorization included the name, address, Social Security number, financial account information, date of birth, driver's license, state issued identification number, medical records, and email addresses of its patients.

33.    The information listed in the above paragraph fits in the category of financial information and Personal Information ("PI").

34.    On information and belief, the vast majority of those impacted by the breach are Maryland residents.

35.    Breaches of PI are subject to the provisions of the Maryland Personal Information Privacy Act ("MD PIPA").

36.    Defendant did not comply with breach notification requirements of MD PIPA.

37.    On information and belief, Defendant had been well aware of the risk posed to its records, such as what was exposed in this case.

5

38.     In the alternative, Defendant should reasonably have been well aware of the risk of cybersecurity breach such as what took place in this case.

39.     The necessary actions to mitigate the risk of the type of incident that occurred were known to Defendant and within their capacity to reasonably implement.

40.     On information and belief, Defendant had access to numerous resources to provide awareness of the cyber threats to their network and to prepare defenses against such attacks.

41.     On information and belief, Defendant failed to leverage countless available third-party resources to improve its cybersecurity posture.

42.     On information and belief, Defendant failed to leverage countless resources available through organizations such as The Joint Commission and the American Hospital Association, or other sources, to improve its cybersecurity posture.

43.     On information and belief, despite its understanding of the need for cybersecurity, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its, or the third party's, computer systems.

44.     On information and belief, Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable computer security safeguards and protocols to protect PI in its possession.

**Plaintiff and Class Member's Losses and Damages**

45.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have sustained and will continue to sustain economic loss and other harms.

46.     Plaintiff and class members will sustain, or have sustained, direct and indirect negative impacts on health and welfare, leading to permanent and irreversible consequences in their personal and professional lives.

6

47.     Plaintiff and class members experienced and/or face an increased risk of emotional distress, mental pain and suffering due to exposure of highly sensitive private information.

48.     As a direct and proximate result of the unauthorized access and disclosure of her private information, Plaintiff became severely stressed and suffered anxiety, including physical manifestations.

49.     Plaintiff and class members will sustain, or have sustained, theft of their Personal Information.

50.     Plaintiff and class members will sustain, or have sustained, publication of their Personal Information to the Dark Web.

51.     Plaintiff and class members will sustain, or have sustained, damages to and diminution in value of their Personal Information.

52.     Plaintiff and class members will sustain, or have sustained, loss of the opportunity to control how their Personal Information is used.

53.     Plaintiff and class members will expend, or have expended, time spent on efforts to research how to prevent, detect, contest, and recover from misuse of their Personal Information;

54.     Plaintiff and class members will sustain, or have sustained, emotional distress from the unauthorized disclosure of information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and other class members.

55.     Plaintiff and class members will sustain, or have sustained, continued risk of exposure to hackers and thieves of their information, which remain in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Class members' data.

7

56.     Plaintiff and class members will sustain, or have sustained, costs associated with attempting to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

57.     Plaintiff and class members will sustain, or have sustained, loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

58.     Plaintiff and class members will sustain, or have sustained, money and time to prevent, detect, contest, and repair identity theft, fraud, and other unauthorized uses of their Personal Information, including by identifying, disputing, and seeking reimbursement for fraudulent activity and canceling compromised financial accounts and associated payment cards, imposing withdrawal and purchase limits on compromised accounts and other accounts subject to potential compromise; and enrolling in credit monitoring and identity theft protection services.

59.     Plaintiff and class members will expend, or have expended, money and time to periodically order credit reports and place temporary freezes on credit.

60.     Plaintiff and class members will expend, or have expended, money and time to avail themselves of assets and/or credit frozen or flagged due to misuse.

61.     Plaintiff and class members will sustain, or have sustained, impairment of their credit scores, ability to borrow, and/or ability to obtain credit.

62.     Plaintiff and class members will sustain, or have sustained, anticipated future costs from the purchase of credit monitoring and identity theft protection services.

63.     Plaintiff and class members will sustain, or have sustained, costs associated with additional computer security needed due to increased personal vulnerability to cyber threats, including the enhanced risk of potential phishing attacks specifically crafted based on the extensive PI revealed, such as increased costs for anti-malware software and network security software and

monitoring services on all of Plaintiff's electronic devices, as well as increased time and effort to monitor for potential intrusions and respond to cybersecurity incidents on their personal devices and networks.

64.     Plaintiff and class members were or will be required to spend a substantial amount of time responding to and rectifying the losses incurred.

65.     Plaintiff alleges that any and all time spent responding to and rectifying the breaches and losses described herein is properly valued at a fair hourly rate, multiplied by the time expended.

66.     According to the U.S. Government Accountability Office, "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm." *See* United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007, *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited September 17, 2025).

67.     The full impact of the violation of privacy through this breach can only be measured over the course of the lifetime of those affected.

### CLASS ALLEGATIONS

#### Statement of Maintainable Class Claims

68.     Pursuant to Md. Rule 2-231, Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated pursuant to Md. Rule 2-231(b)(2) and (3).

#### Definition of Class

69.     The "Class" that Plaintiff seeks to represent is defined as follows: All persons

whose Personal Information was maintained by SMH and accessed or acquired without authorization during the cybersecurity incident described herein.

70.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parent entities, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

71.    Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

### Allegations of Numerosity

72.    Pursuant to Md. Rule 2-231(a)(1), the Class Members are so numerous that the joinder of all members is impracticable. Upon information and belief, there are over ten thousand (10,000) individuals whose Personal Information may have been improperly accessed in the Data Breach.

73.    The Class is readily identifiable within Defendant's internal records.

### Identification of Common Questions of Law or Fact

74.    Pursuant to Md. Rule 2-231(a)(2), the questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

75.    A common question of law or fact is whether and to what extent Defendant had a duty to protect the privacy and Personal Information of Plaintiff and class members.

76.    A common question of law or fact is whether Defendant had a duty not to disclose the Personal Information of Plaintiff and class members to unauthorized third parties.

77.    A common question of law or fact is whether Defendant had duties not to use the Personal Information of Plaintiff and class members for non-business purposes.

78.    A common question of law or fact is whether Defendant failed to adequately safeguard the Personal Information of Plaintiff and class members.

79.    A common question of law or fact is whether and when Defendant actually learned of the Data Breach.

80.    A common question of law or fact is whether Defendant adequately, promptly, and accurately informed Plaintiff and class members that their PI had been compromised.

81.    A common question of law or fact is whether Defendant violated the law by failing to promptly notify Plaintiff and class members that their PI had been compromised,

82.    A common question of law or fact is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

83.    A common question of law or fact is whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur.

84.    A common question of law or fact is whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Personal Information of Plaintiff and class members.

85.    A common question of law or fact is whether Plaintiff and class members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct.

86.     A common question of law or fact is whether Plaintiff and class members are entitled to restitution as a result of Defendant's wrongful conduct.

87.     A common question of law or fact is whether Plaintiff and class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

### Allegations of Typicality

88.     Pursuant to Md. Rule 2-231(a)(3), Plaintiff's claims are typical of those of other Class Members because all had their Personal Information compromised as a result of the Data Breach due to Defendant's misfeasance.

### Adequacy of Representation

89.     Pursuant to Md. Rule 2-231(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the class members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other members of the class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the class and the infringement of the rights Plaintiff has suffered are typical of other class members.

90.     Plaintiff has retained counsel experienced in complex intellectual property litigation, information technology litigation, and class action litigation.

91.     Plaintiff has retained undersigned counsel Eric Menhart, who has litigated and tried complex technology cases in state and federal courts for nearly twenty years. Among other things, Menhart has been quoted or featured in numerous media outlets, including Forbes, Baltimore Sun, Washington Post, USA Today, CNN and Fox News on IT and IP legal issues. Menhart has also successfully litigated statutes such as the Stored Communications Act and the Computer Fraud and Abuse Act in federal trial and appellate courts.

12

92.     Counsel's curriculum vitae will be presented to the Court at an appropriate time.

### Predominance

93.     Pursuant to Md. Rule 2-231(b)(2), Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that the Plaintiff's and Class Members' data was maintained and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Defendant's policies challenged herein apply to and affect Class Members.

94.     The data breach affected class members uniformly and Plaintiff's claims alleged herein are based on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

### Superiority

95.     Pursuant to Md. Rule 2-231(b)(3), Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant.

96.     Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

97.     The nature of this action and the nature of applicable laws make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and class members for the wrongs alleged.

98.     If the matter was not pursued as a class action Defendant would gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual class member with superior financial and legal resources.

99.     The costs of individual suits could unreasonably consume the amounts that would be recovered.

100.    Proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each class member to recover on the cause of action alleged.

101.    Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this instant litigation.

102.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, including its privacy policy, uniform methods of data collection, the consistent provisions of the relevant laws, and the ascertainable identities of class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

103.    Adequate notice can be given to class members directly using information maintained in Defendant's records.

104.    Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personal Information of class members, Defendant may continue to refuse to provide proper notification to class members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Petition.

14

105.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

106.    Likewise, under Md. Rule 2-231(c)(4), numerous issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

107.    One issue appropriate for certification is whether Defendant owed a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

108.    Another issue appropriate for certification is whether Defendant breached a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

109.    Another issue appropriate for certification is whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

110.    Another issue appropriate for certification is whether Defendant adequately, accurately and lawfully informed Plaintiff and class members that their Personal Information had been compromised.

111.    Another issue appropriate for certification is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

112.    Another issue appropriate for certification whether unauthorized parties obtained Class Members' Personal Information via the Data Breach.

113.    Another issue appropriate for certification is whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and class members.

114.    Another issue appropriate for certification is whether class members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I - Negligence

115.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

116.    Defendant and its selected third-party IT vendor had a duty to the Plaintiff to maintain data security measures consistent with statutory and industry standards.

117.    Defendant and its selected third-party IT vendor had a duty to the Plaintiff to design, maintain, or test security systems to ensure that Plaintiff's PI in their possession was adequately secured and protected.

118.    If Defendant chose to employ third-party IT vendors, Defendant had a duty to select vendors that were sufficiently vetted, competent, and capable of protecting PI.

119.    Defendant and its selected third-party IT vendor had a duty to the Plaintiff to implement processes that would detect a breach of its security systems in a timely manner.

120.    On information and belief, Defendant and its selected third-party IT vendor breached each of these duties, as evidenced by the events described in this complaint.

121.    Defendant and its selected third-party IT vendor knew or should have known of the risks inherent in collecting, maintaining, and storing PI and medical records of Plaintiff and the heightened risk of doing so without adequate security systems and protocols.

122. Defendant and its selected third-party IT vendor owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PI in its possession, or the possession of its vendors, from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

123. On information and belief, Defendant and its selected third-party IT vendor breached the above duty, as evidenced by the events described in this complaint.

124. Defendant and its selected third-party IT vendor had a duty to prevent foreseeable harm to Plaintiff. This duty existed because Plaintiff and the class members were foreseeable and probable victims of inadequate security practices, whether based on Defendant's internal record-keeping or third-party IT vendor data storage.

125. It was foreseeable that Plaintiff and the class members would be harmed by the failure to protect their PI because unauthorized actors routinely attempt to steal such information and use it for nefarious purposes.

126. Defendant and its selected third-party IT vendor breached the duties it owed to Plaintiff and class members to keep their information secure.

127. But for Defendant and its selected third-party IT vendor's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PI would not have been compromised.

128. On information and belief, Defendant and its selected third-party IT vendor had numerous opportunities in advance of the breach to reasonably implement adequate cybersecurity measures, or ensure a vendor implemented adequate practices, as part of their duties to the Plaintiff, but failed to do so.

129. On information and belief, Defendant and its selected third-party IT vendor failed

17

to maintain data security measures consistent with statutory and industry standards.

130.    On information and belief, Defendant and its selected third-party IT vendor failed to implement numerous measures recommended by the FBI as proactive preventative measures to maintain computer network security and avoid attacks, such as the one that resulted in the breach.

131.    Defendant and its selected third-party IT vendor failed to implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

132.    Defendant and its selected third-party IT vendor failed to enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

133.    Defendant and its selected third-party IT vendor failed to scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

134.    Defendant and its selected third-party IT vendor failed to configure firewalls to block access to known malicious IP addresses.

135.    Defendant and its selected third-party IT vendor failed to patch operating systems, software, and firmware on devices.

136.    Defendant and its selected third-party IT vendor failed to consider using a centralized patch management system.

137.    Defendant and its selected third-party IT vendor failed to set anti-virus and anti-malware programs to conduct regular scans automatically.

138.    Defendant and its selected third-party IT vendor failed to manage the use of

privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

139.    Defendant and its selected third-party IT vendor failed to configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needed to read specific files, the user should not have written access to those files, directories, or shares.

140.    Defendant and its selected third-party IT vendor failed to disable macro scripts from office files transmitted via email. As one example, Defendant likely failed to consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

141.    Defendant and its selected third-party IT vendor failed to implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

142.    Defendant and its selected third-party IT vendor failed to consider disabling Remote Desktop protocol (RDP) if it is or was not being used.

143.    Defendant and its selected third-party IT vendor failed to use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

144.    Defendant and its selected third-party IT vendor failed to execute operating system environments or specific programs in a virtualized environment.

145.    Defendant and its selected third-party IT vendor failed to categorize data based on

organizational value and implement physical and logical separation of networks and data for different organizational units.

146.    Defendant and its selected third-party IT vendor failed to conduct an annual penetration test and vulnerability assessment.

147.    On information and belief, Defendant and its selected third-party IT vendor failed to implement the measures recommended by the United States Cybersecurity & Infrastructure Security Agency to prevent and detect cyber-attacks, including the attack that resulted in the breach.

148.    On information and belief, Defendant and its selected third-party IT vendor failed to implement the measures recommended by the Microsoft Threat Protection Intelligence Team to prevent and detect cyber-attacks, including the attack that resulted in the breach.

149.    As a direct and proximate result of Defendant and its selected third-party IT vendor's negligence and breach of duties, Plaintiff sustained and will continue to sustain economic loss and other harms.

150.    Defendant and its selected third-party IT vendor owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant and its selected third-party IT vendor had a duty to prevent foreseeable harm to others.

151.    This duty existed because Plaintiff and Class Members were foreseeable and probable victims of inadequate security practices.

152.    In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their Personal Information, because hackers routinely attempt to

steal such information and use it for nefarious purposes, but Defendant and its selected third-party IT vendor also knew that it was more likely than not Plaintiff and other Class Members would be harmed, and in fact, suffered harm as identified above.

153.    Defendant and its selected third-party IT vendor breached the duties they owed to Plaintiff and Class Members to keep their information secure. But for Defendant and its selected third-party IT vendor's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, and without any wrongdoing on the part of Plaintiff or Class Members, Plaintiff's and Class Members' Personal Information would not have been compromised.

154.    Plaintiff relies on the doctrines of actual and apparent agency, *res ipsa loquitur*, and *respondeat superior* where applicable.

155.    Defendant and its selected third-party IT vendor are further subject to negligence per se based on their violations of Maryland statutes.

156.    Defendant's and its selected third-party IT vendor negligence caused Plaintiff and Class Members to suffer harm as described above and actual damages in an amount to be determined at trial.

### Count II – Violation of Maryland Personal Information Privacy Act ("PIPA")

### Md. Com. Law §§ 14-3503 and 14-3504

157.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

158.    Per Maryland §14–3501(e)(1), "Personal Information" (PI) means: (i) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when the data elements are not encrypted, redacted, or otherwise protected by another method that renders the information unreadable or unusable: 1. A Social

Security number, an Individual Taxpayer Identification Number, a passport number, or other identification number issued by the federal government; 2. A driver's license number or State identification card number; 3. An account number, a credit card number, or a debit card number, in combination with any required security code, access code, or password, that permits access to an individual's financial account; 4. Health information, including information about an individual's mental health; 5. A health insurance policy or certificate number or health insurance subscriber identification number, in combination with a unique identifier used by an insurer or an employer that is self-insured, that permits access to an individual's health information.

159.    As described herein, Defendant and its selected third-party IT vendor failed to implement and maintain reasonable security procedures as required by Maryland law. *See* Md. Com. Law §14–3503(a).

160.    Defendant and its selected third-party IT vendor were legally required to "implement and maintain reasonable security procedures and practices" to "protect personal information from unauthorized access, use, modification, or disclosure."

161.    As described herein, the fact Defendant and its selected third-party IT vendor failed to prevent or even reasonably detect the data breach constituted a violation of their requirement to have reasonable security procedures under §14–3503.

162.    As evidenced by the results, whatever security practices and procedures Defendant and its selected third-party IT vendor had in place, they were not appropriate to the nature of PI maintained, nor the nature of Defendant's size, nor its operations.

163.    Further, SMH violated PIPA because it did not provide notice of the breach of its security in accordance with the requirements of §14–3504.

164.    The incident as described herein constitutes a breach of a security system under

§14–3504.

165.    Maryland Law requires that "notification . . . shall be given as soon as reasonably practicable, but not later than 45 days after the business discovers or is notified of the breach of the security of a system." *See* Md. Com. Law §14–3504(b)(3).

166.    The notice provided by Defendant did not comply with this requirement. The notice received by Plaintiff was dated August 1, 2025, and the same letter admits that SMH had notice of the "cybersecurity incident" as early as March 15, 2025. *See* Exhibit #1.

167.    The notice provided by Defendant was sent approximately one hundred and forty-five days (145) after notice of the breach, in violation of the law.

168.    None of the communications following the breach, from SMH to Plaintiff or members of the class, were delivered timely. Defendant's failure to timely notify Plaintiff and members of the class constitutes a violation of the statute.

169.    On information and belief, SMH also failed to provide adequate or timely notice to the Maryland Attorney General of the incident, as required by §14–3504(h). This constitutes a violation of the statute.

170.    Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

**Count III – Action for Violation of Maryland Consumer Protection Act ("CPA")**

**Md. Com. Law §§ 13-301**

171.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

172.    SMH has engaged in unfair or deceptive trade practices, in violation of Maryland Code, Commercial Law Article §§ 13-301 and 13-303.

173.    Under Maryland Code, Commercial Law Article §14–3508, a violation of MD PIPA is an unfair or deceptive trade practice as defined in the Maryland Consumer Protection Act.

174.    SMH's violations of MD PIPA, as described above, therefore are unfair and deceptive trade practices and violations of § 13-301.

175.    Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

176.    Plaintiff should also be awarded attorneys' fees as authorized by Md. Com. Law § 13-408(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief:

A. An Order certifying the instant matter as a class action;

B. Injunctive relief, precluding Defendant from further engaging in activity complained of herein;

C. Declaratory relief, stating that Defendant is liable to Plaintiff, and any putative class, for the actions complained of herein;

D. An award for damages, in an amount to be proven at trial, of any and all statutory damages, treble damages, punitive damages or any other damages that may be available to Plaintiff under any statute or cause of action; including, but not limited to any statute set forth herein;

E. An award of attorney's fees, pursuant to any applicable statute allowing or requiring such fees, or pursuant to common law; including, but not limited to, statutes cited herein;

24

F.   An award of reasonable costs and litigation expenses.

G.   An award of pre-judgment and post-judgment interest, to the extent allowable; and

H.   Such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, pursuant to Md. Rule 2-325, respectfully demands a trial by jury of all issues so triable.

* * *

Respectfully submitted,

*/s/ Eric Menhart*
Eric Menhart, Esq (MD Bar No. 0606130215)
Lexero Law
80 M St SE, Ste 100
Washington, DC 20003
Phone: 855-453-9376 Ext. 101
Eric.Menhart@Lexero.com

*Attorney for Plaintiff and Proposed Class*

E-FILED; Saint Mary's Circuit Court
Docket: 9/22/2025 10:12 AM; Submission: 9/22/2025 10:12 AM
Envelope: 23026143

IN THE CIRCUIT COURT FOR St. Mary's County
<span style="font-size:smaller">(City/County)</span>

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).
*Defendant:* You must file an Information Report as required by Rule 2-323(h).
***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF  ☐ DEFENDANT     CASE NUMBER _____
(Clerk to insert)

**CASE NAME:** Abraham _____ vs. St. Mary's Hospital of St. Mary's County, Inc.
Plaintiff                                                           Defendant

**PARTY'S NAME:** Ilana Abraham _____     PHONE: _____

**PARTY'S ADDRESS:** c/o Lexero Law, 80 M St SE, Ste 100, Washington, DC 20003

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** Eric Menhart, Esq. _____  PHONE: 202-904-2818

**PARTY'S ATTORNEY'S ADDRESS:** Lexero Law, 80 M St SE, Ste 100, Washington, DC 20003

**PARTY'S ATTORNEY'S E-MAIL:** Eric.Menhart@Lexero.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No  If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours  5  days

### PLEADING TYPE

**New Case:**     ☒ Original         ☐ Administrative Appeal      ☐ Appeal
**Existing Case:** ☐ Post-Judgment    ☐ Amendment
*If filing in an existing case, skip Case Category/ Subcategory section – go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY *(Check one box.)*

**TORTS**
☐ Asbestos
☐ Assault and Battery
☒ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt:
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☒ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

**PROPERTY**
☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☒ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☒ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☒ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☒ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☒ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☒ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☐ Liability is not conceded, but is not seriously in dispute.    ☒ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☒ Over $100,000

☐ Medical Bills $ _____    ☐ Wage Loss $ _____    ☐ Property Damages $ _____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | | |
|---|---|---|---|
| A. Mediation | ☒ Yes ☐ No | C. Settlement Conference | ☒ Yes ☐ No |
| B. Arbitration | ☒ Yes ☐ No | D. Neutral Evaluation | ☒ Yes ☐ No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL.***

### *(Case will be tracked accordingly)*

☐ 1/2 day of trial or less    ☐ 3 days of trial time

☐ 1 day of trial time    ☒ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of Defendant's response    ☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

| COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR) |
|---|

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited -** Trial within 7 months of Defendant's response          ☐ **Standard -** Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

09/19/2025
_____
Date

80 M St SE
_____
Address

Washington         DC         20003
_____
City          State          Zip Code

/s/Eric Menhart, Esq.          0606130215
_____
Signature of Attorney / Party     Attorney Number

Eric Menhart, Esq.
_____
Printed Name

E-FILED; Saint Mary's Circuit Court
Docket: 9/22/2025 10:12 AM; Submission: 9/22/2025 10:12 AM
Envelope: 23026143

**MedStar St. Mary's Hospital**
Secure Processing Center
25 Route 111, P.O. Box 1048
Smithtown, NY 11787

Ilana Lucille Abraham

August 1, 2025

Dear Ilana Lucille Abraham:

On behalf of MedStar St. Mary's Hospital, we are writing to let you know about a security incident at Oracle Health, an electronic health records vendor used by MedStar St. Mary's. This notice explains the Oracle Health security incident, outlines the measures we have taken in response, and offers steps you can take.

**What Happened?**
On March 15, 2025, Oracle Health informed MedStar St. Mary's Hospital that it experienced a cybersecurity event involving unauthorized access to MedStar St. Mary's patient information contained on Oracle Health's systems. Specifically, Oracle Health explained that it discovered an unauthorized party gained access to certain Oracle Health data migration systems sometime after January 22, 2025. We understand that we are not the only healthcare provider impacted by this Oracle Health incident. On June 6, 2025, MedStar St. Mary's received from Oracle Health a list of patients whose information was included in the files involved in the incident.

**What Information Was Involved?**
The patient information accessed may have included one or more of the following: patient name, Social Security numbers, driver's license numbers, dates of birth, treating physician, dates of service, medication information, insurance information and treatment and/or diagnostic information.

**What We Are Doing & What You Can Do.**
While the event did not impact MedStar St. Mary's own network, we are notifying patients of this incident and sharing the steps that we are taking. We worked with third-party experts to investigate and understand what happened, promptly notified law enforcement and have communicated with Oracle Health to understand as much as possible about the potential risk to data belonging to MedStar St. Mary's patients. We remain committed to upholding high standards of protecting patient information held by our vendors, including Oracle Health.

As a result of this incident, we are offering a 12-month membership of Experian's IdentityWorks[SM] Credit 3B free of charge. This product helps detect possible misuse of your personal information and provides identity protection services focused on identification and resolution of identity theft. IdentityWorks[SM] Credit 3B is completely free to you and enrolling in this program will not hurt your credit score. For more information on identity theft prevention and IdentityWorks[SM] Credit 3B, including instructions on how to activate your complimentary membership, please see the additional information provided with this letter.

**For More Information.**
We are sorry for any concern this incident may cause you, and we continue to review and assess the cybersecurity protections of our third-party vendors. Should you have any further questions about this matter, please do not hesitate to call 1-855-260-0301, Monday through Friday, between 9:00 am and 9:00 pm Eastern Time, excluding major U.S. holidays.

Sincerely,

MedStar St. Mary's Hospital



**CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND**
41605 Courthouse Drive
PO Box 676, Leonardtown, Maryland, 20650

Main: 301-475-7844
Civil Dept.: Ext. 4562
Criminal/Juvenile/Jury Dept.: Ext. 4564
Case Management Office: Ext. 4101/4102
MD Toll Free: 800-988-5052
MD Relay Service: 711

**To:** ERIC JAMES MENHART

**Case Number:**      C-18-CV-25-000599
**Other Reference Number(s):**

ILANA ABRAHAM VS. ST. MARY S HOSPITAL OF ST. MARY S COUNTY, INC.

Date: 9/22/2025

## MDEC DEFICIENCY NOTICE
### (Md. Rules Title 20)

To **Eric Menhart:** You have a deficiency in your filing. **Pursuant to Maryland Rule 20-203(d)(3) the court will strike the submission unless the deficiency is corrected or the deficient submission is withdrawn within 14 days or the court orders otherwise. Please make the correction(s) indicated below and refile or withdraw the submission within 14 days, making no other amendments, modifications, or changes to the submission except to correct the deficiency. The time to file any responsive submission shall run from the date that the correct submission is filed. The deficient submission file name(s) and date of filing are: Eric Menhart  9/22/2025.**

☐ In any one case multiple submissions (including proposed orders) must be submitted in the same envelope as separate PDF files. Please resubmit the filings as separate submissions in the same envelope. (See Rule 20-201(e).) *Does not apply to L & T bulk filing.*

☐ The submission is illegible or scanned with an incorrect orientation (e.g., upside down, sideways, blurry, and blank pages).

☐ The electronic file names must relate to the title of the submission. The electronic file name must state whether all or part of the submission is to be sealed or shielded pursuant to Rule 20-201.1. (e.g., RESTRICTED DOCUMENT-Request to Shield Denied or Dismissed Protective Order Records) (See Rule 20-201(i).) If an exhibit to a submission is filed, the exhibit and the electronic file name should accurately refer to the submission to which they relate. (e.g., Ex 1 Pl MSJ) When the exhibit is an affidavit or other testimony, the file name must identify the affiant or witness (e.g., Affidavit of John Doe).

☐ The exhibit(s) are not identified using the drop-down menu provided.

☐ The submission is not permitted to be filed electronically. (See Rule 20-106(c)(2).)

☐ The submission does not include the filer's signature (the signer's typewritten name accompanied by (1) a visual image of the signer's handwritten signature or (2) by the symbol /s/) as required by Rule(s) 20-107(a)(1) and 20-101(t).

☒ **The submission does not have the filer's address, e-mail address, telephone number, or the attorney's identifying Attorney Number registered with the Attorney Information System as required by Rule 20-107(a)(2).**

☐ You attempted to enter your appearance in the case as attorney for the victim or victim's representative without using form MDJ-009-Notice of Entry of Appearance by Attorney for Victim or Victim's Representative. (See Rule 20-103(b)(1)(A).)

Case Number: C-18-CV-25-000599

Other Reference Number(s):

☐ The submission requires a signature under oath, affirmation, or with verification and is not hand-signed and scanned or affixed with the signer's digital signature. (See Rule(s) 20-107(d)(1) and 20-101(e).)

☐ <u>CONSOLIDATED CASES:</u> The submission was filed into a subcase. Where a judge has issued an order consolidated cases and designates a lead case, all subsequent submissions must be filed in the lead case.

☐ The proposed order was not submitted as a separate document, identified as a proposed order, or identified as relating to the motion or other request for court action to which the order pertains. (See Rule 20-201(j).) *This does not apply if submitted on a combined motion & order form issued by the Judiciary.*

☐ The filing code was incorrect, and the clerk's office was unable to determine the correct code.

☐ The State Court Administrator requirements for requesting sheriff, constable or certified mail service in the District Court have not been met (e.g., includes improper fee multiplier).

☐ The submission was filed by a registered user on behalf of a non-registered user in violation of the policy published by the State Court Administrator.

☐ The party's name is not an identical reference to the name of each party (spelling, first name, middle name(s), last name(s), initial(s), and other identifiers) as required wherever that party's name referred to in writing/electronically, including but not limited to: in the pleading or other submission, party field, or File and Serve.

☐ The filing location is incorrect.

☐ (District Court only) WARRANT OF RESTITUTION: The petitioner must submit both the front of the Petition for Warrant of Restitution and the second page which contains important notices to defendant.

☐ (District Court only) The submission must be submitted on the most recent version of a form approved by the Chief Judge of the District Court.

☐ Other

**To resubmit the submission(s), please re-file in a different envelope within 14 days of this notice and under comments state that you are filing to correct the Deficiency Notice filed on 9/22/2025 with envelope 23018924.**

*Debra J Burch*

Debra J. Burch / JAP
Clerk of the Circuit Court

**NOTE:** You must submit a motion and have it granted by a judge to receive a refund of any fees associated with the filing.

## ORDER STRIKING DEFICIENT SUBMISSION(S)

The above deficiency notice has not been corrected within the required 14 days. The court has not issued an order related to the deficiency. Per Rule 20-203(d)(3), the deficient submission(s) is/are stricken.

_____         _____
Date                                                  Judge

cc:    Ilana Abraham

**Case Number: C-18-CV-25-000599**

**Other Reference Number(s):**

Eric James  Menhart



**CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND**

41605 Courthouse Drive
PO Box 676, Leonardtown, Maryland, 20650

Main: 301-475-7844
Civil Dept.: Ext. 4562
Criminal/Juvenile/Jury Dept.: Ext. 4564
Case Management Office: Ext. 4101/4102
MD Toll Free: 800-988-5052
MD Relay Service: 711

**To:  ST. MARY'S HOSPITAL OF ST. MARY'S CO., INC.
THE CORPORATION TRUST INCORPORATED
2405 YORK ROAD
SUITE 201
LUTHERVILLE TIMONIUM, MD 21093-2264**

|  |  |
|---|---|
| Case Number: | C-18-CV-25-000599 |
| Other Reference Number(s): | |
| Child Support Enforcement Number: | |

**ILANA ABRAHAM VS. ST. MARY S HOSPITAL OF ST. MARY S COUNTY, INC.**

Issue Date: 9/22/2025

### WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

ILANA ABRAHAM
AS INDIVIDUAL, AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED
C/O LEXERO LAW
80 M STREET SE, SUITE 100
WASHINGTON DC 20003

This summons is effective for service only if served within 60 days after the date it is issued.

*Debra J Burch*

Debra J. Burch / JAP
Clerk of the Circuit Court

To the person summoned:
   Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
   Personal attendance in court on the day named is NOT required.
   It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.

Ilana Abraham vs. St. Mary s Hospital of St. Mary s County, Inc.

3.  Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4.  If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Ilana Abraham vs. St. Mary s Hospital of St. Mary s County, Inc.

**Circuit Court for St. Mary's County**
**Case Number: C-18-CV-25-000599**

## SHERIFF'S RETURN
### (please print)

To:  THE CORPORATION TRUST INC.

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                   Location of service

_____ by _____ with the following:
                                   Manner of service

☐ Summons                         ☐ Counter-Complaint

☐ Complaint                       ☐ Domestic Case Information Report

☐ Motions                         ☐ Financial Statement

☐ Petition and Show Cause Order   ☐ Interrogatories

☐ Other _____
         Please specify

(2) Was unable to serve because:

☐ Moved left no forwarding address      ☐ No such address

☐ Address not in jurisdiction           ☐ Other _____
                                                  Please specify

Sheriff fee: $ _____   ☐ waived by _____

_____        _____
Date                           Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

### IN THE CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND

| | |
|---|---|
| ILANA ABRAHAM, *an individual, and on behalf of all others similarly situated.*<br><br>c/o Lexero Law<br>80 M St SE Ste 100<br>Washington, DC 20003<br><br>v.<br><br>ST. MARY'S HOSPITAL OF ST. MARY'S COUNTY, INC.<br>25500 Point Lookout Rd.<br>Leonardtown, MD 20650<br><br>*Serve*:<br>The Corporation Trust Incorporated<br>2405 York Road Suite 201<br>Lutherville Timonium, MD 21093-2264 | Case No: __C18CV25599__<br><br>JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiff Ilana Abraham, an individual ("Abraham" or "Plaintiff"), on behalf of herself and others similarly situated, by and through undersigned counsel, sues Defendant, St. Mary's Hospital of St. Mary's County, Inc. ("St. Mary's Hospital" or "SMH" or "Defendant") and states as follows:

1.     This class action seeks monetary and injunctive relief to redress injuries resulting from Defendant's negligence and wrongful acts related to a computer data breach that exposed the personal data of individuals who were patients of SMH.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action as the amount in controversy exceeds $25,000, exclusive of interest and costs, and the relief sought includes equitable, declaratory, and injunctive relief for which the Circuit Court has exclusive jurisdiction.

1

3.      This Court has personal jurisdiction over the present matter because Defendant contracted to provide services in Maryland, or regularly conducts business in Maryland.

4.      Maryland is also where a substantial portion of the events or omissions giving rise to this claim occurred and where a substantial portion of the property that is the subject of this action is situated.

5.      This Court has personal jurisdiction over the present matter because Defendant's principal place of business is located in St. Mary's County with its main address as 25500 Point Lookout Rd. Leonardtown, MD 20650.

## FACTUAL BACKGROUND

### Defendant SMH

6.      SMH, founded in 1912, is a full-service hospital located in Leonardtown, MD.

7.      "Personal Information" ("PI") is defined under Maryland's Personal Information Privacy Act §14–3501(e)(1).

8.      On information and belief, Defendant regularly collects and stores a wide variety of PI from its customers and prospective customers.

9.      On information and belief, PI collected by SMH regularly includes patient name, social security number, driver's license numbers, dates of birth, treating physician, dates of service, medication information, insurance information and treatment and/or diagnostic information.

10.     As a hospital that provides medical services, Defendant is part of the health care industry.

11.     The Joint Commission, the main U.S. accrediting body for hospitals, has advised that "It's critical that healthcare organizations do all they can to prevent a cyberattack, such as decreasing access points for penetration, removing devices with old or obsolete operating systems,

2

and training and testing staff to decrease vulnerability to phishing." *See* Sentinel Event Alert, *available* *at* https://digitalassets.jointcommission.org/api/public/content/8bd6addf4df943f383a074f2d9d4af6, last visited September 17, 2025.

12.     The American Hospital Association recently noted that there were "hacking incidents targeting non-hospital health care providers, including third-party service and software providers." *See* AHA Statement to Senate HELP Committee on Cybersecurity, *available at* https://www.aha.org/testimony/2025-07-09-aha-statement-senate-help-committee-cybersecurity, last visited September 17, 2025.

**The Data Breach**

13.     Plaintiff was a patient with SMH and entrusted Defendant with her PI.

14.     On information and belief, SMH did not place sufficient priority on cybersecurity or maintaining privacy of their patients' PI.

15.     At all times material hereto, Plaintiff's PI was stored on SMH's computer network and/or its related cloud-based network, which may or may not have been hosted or administered by a third-party IT vendor.

16.     Plaintiff received a letter from SMH dated August 1, containing information about a security breach of a computer network containing Plaintiff's PI. *See* Exhibit #1.

17.     In sum, Defendant suffered from a breach in their computer network security or a third party's computer network security that had affected the privacy and PI of Plaintiff and numerous other persons.

18.     As a result of the breach, the PI of Plaintiff was accessed and disclosed in an unauthorized manner.

19.     SMH did not reveal what actions were taken by the unauthorized actor during the time they had access to SMH's or the third party's network.

20.     SMH did not reasonably explain the delay in notification to those affected.

21.     SMH's breach notification provided no information as to who was suspected of being the source of the breach or what specific failure there was in their security architecture, network, policy, or procedures, or the third party's computer network security architecture, network, policy, or procedures.

22.     SMH's breach notification provided no specific details as to what technical measures were taken to secure their network.

23.     SMH's breach notification provided no details as to the additional security measures and training they have undertaken to prevent such future incidents.

24.     On information and belief, the integrity of SMH's entire computer network, or the integrity of the third-party's computer network, was compromised as a result of this breach incident.

25.     On information and belief, the confidentiality of all information on SMH's computer network, or the integrity of the third-party's computer network, was compromised based on this breach incident.

26.     On information and belief, most, if not all, of SMH's patients had their PI and medical records exposed as a result of this breach.

27.     On information and belief, data present on SMH's network, or the third party's network, including PI of current and former patients, was copied, downloaded and exfiltrated by criminal actors during the time they had unauthorized access.

28.     On information and belief, the compromised PI of current and former patients

4

remains in the hands of criminal actors that breached SMH's network.

### SMH's Selection of Third Party IT Vendors

29.    On information and belief, SMH maintained complete authority to research, select, and retain its third-party IT vendors.

30.    SMH contracted with third-party IT vendors on its own accord and selected third-party IT vendors after considering a variety of other merchants that may have met SMH's business needs.

31.    SMH's failure to select a vendor that sufficiently met cybersecurity standards properly protected patient data was negligent.

### Failures to Secure Data and Manage the Resulting Data Breach

32.    On information and belief, the information accessed without authorization included the name, address, Social Security number, financial account information, date of birth, driver's license, state issued identification number, medical records, and email addresses of its patients.

33.    The information listed in the above paragraph fits in the category of financial information and Personal Information ("PI").

34.    On information and belief, the vast majority of those impacted by the breach are Maryland residents.

35.    Breaches of PI are subject to the provisions of the Maryland Personal Information Privacy Act ("MD PIPA").

36.    Defendant did not comply with breach notification requirements of MD PIPA.

37.    On information and belief, Defendant had been well aware of the risk posed to its records, such as what was exposed in this case.

38.     In the alternative, Defendant should reasonably have been well aware of the risk of cybersecurity breach such as what took place in this case.

39.     The necessary actions to mitigate the risk of the type of incident that occurred were known to Defendant and within their capacity to reasonably implement.

40.     On information and belief, Defendant had access to numerous resources to provide awareness of the cyber threats to their network and to prepare defenses against such attacks.

41.     On information and belief, Defendant failed to leverage countless available third-party resources to improve its cybersecurity posture.

42.     On information and belief, Defendant failed to leverage countless resources available through organizations such as The Joint Commission and the American Hospital Association, or other sources, to improve its cybersecurity posture.

43.     On information and belief, despite its understanding of the need for cybersecurity, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its, or the third party's, computer systems.

44.     On information and belief, Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable computer security safeguards and protocols to protect PI in its possession.

**Plaintiff and Class Member's Losses and Damages**

45.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have sustained and will continue to sustain economic loss and other harms.

46.     Plaintiff and class members will sustain, or have sustained, direct and indirect negative impacts on health and welfare, leading to permanent and irreversible consequences in their personal and professional lives.

6

47.     Plaintiff and class members experienced and/or face an increased risk of emotional distress, mental pain and suffering due to exposure of highly sensitive private information.

48.     As a direct and proximate result of the unauthorized access and disclosure of her private information, Plaintiff became severely stressed and suffered anxiety, including physical manifestations.

49.     Plaintiff and class members will sustain, or have sustained, theft of their Personal Information.

50.     Plaintiff and class members will sustain, or have sustained, publication of their Personal Information to the Dark Web.

51.     Plaintiff and class members will sustain, or have sustained, damages to and diminution in value of their Personal Information.

52.     Plaintiff and class members will sustain, or have sustained, loss of the opportunity to control how their Personal Information is used.

53.     Plaintiff and class members will expend, or have expended, time spent on efforts to research how to prevent, detect, contest, and recover from misuse of their Personal Information;

54.     Plaintiff and class members will sustain, or have sustained, emotional distress from the unauthorized disclosure of information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and other class members.

55.     Plaintiff and class members will sustain, or have sustained, continued risk of exposure to hackers and thieves of their information, which remain in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Class members' data.

56.     Plaintiff and class members will sustain, or have sustained, costs associated with attempting to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

57.     Plaintiff and class members will sustain, or have sustained, loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

58.     Plaintiff and class members will sustain, or have sustained, money and time to prevent, detect, contest, and repair identity theft, fraud, and other unauthorized uses of their Personal Information, including by identifying, disputing, and seeking reimbursement for fraudulent activity and canceling compromised financial accounts and associated payment cards, imposing withdrawal and purchase limits on compromised accounts and other accounts subject to potential compromise; and enrolling in credit monitoring and identity theft protection services.

59.     Plaintiff and class members will expend, or have expended, money and time to periodically order credit reports and place temporary freezes on credit.

60.     Plaintiff and class members will expend, or have expended, money and time to avail themselves of assets and/or credit frozen or flagged due to misuse.

61.     Plaintiff and class members will sustain, or have sustained, impairment of their credit scores, ability to borrow, and/or ability to obtain credit.

62.     Plaintiff and class members will sustain, or have sustained, anticipated future costs from the purchase of credit monitoring and identity theft protection services.

63.     Plaintiff and class members will sustain, or have sustained, costs associated with additional computer security needed due to increased personal vulnerability to cyber threats, including the enhanced risk of potential phishing attacks specifically crafted based on the extensive PI revealed, such as increased costs for anti-malware software and network security software and

monitoring services on all of Plaintiff's electronic devices, as well as increased time and effort to monitor for potential intrusions and respond to cybersecurity incidents on their personal devices and networks.

64.     Plaintiff and class members were or will be required to spend a substantial amount of time responding to and rectifying the losses incurred.

65.     Plaintiff alleges that any and all time spent responding to and rectifying the breaches and losses described herein is properly valued at a fair hourly rate, multiplied by the time expended.

66.     According to the U.S. Government Accountability Office, "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm." *See* United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007, *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited September 17, 2025).

67.     The full impact of the violation of privacy through this breach can only be measured over the course of the lifetime of those affected.

### CLASS ALLEGATIONS

#### Statement of Maintainable Class Claims

68.     Pursuant to Md. Rule 2-231, Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated pursuant to Md. Rule 2-231(b)(2) and (3).

#### Definition of Class

69.     The "Class" that Plaintiff seeks to represent is defined as follows: All persons

whose Personal Information was maintained by SMH and accessed or acquired without authorization during the cybersecurity incident described herein.

70.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parent entities, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

71.    Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

### Allegations of Numerosity

72.    Pursuant to Md. Rule 2-231(a)(1), the Class Members are so numerous that the joinder of all members is impracticable. Upon information and belief, there are over ten thousand (10,000) individuals whose Personal Information may have been improperly accessed in the Data Breach.

73.    The Class is readily identifiable within Defendant's internal records.

### Identification of Common Questions of Law or Fact

74.    Pursuant to Md. Rule 2-231(a)(2), the questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

75.    A common question of law or fact is whether and to what extent Defendant had a duty to protect the privacy and Personal Information of Plaintiff and class members.

76.    A common question of law or fact is whether Defendant had a duty not to disclose the Personal Information of Plaintiff and class members to unauthorized third parties.

77.    A common question of law or fact is whether Defendant had duties not to use the Personal Information of Plaintiff and class members for non-business purposes.

78.    A common question of law or fact is whether Defendant failed to adequately safeguard the Personal Information of Plaintiff and class members.

79.    A common question of law or fact is whether and when Defendant actually learned of the Data Breach.

80.    A common question of law or fact is whether Defendant adequately, promptly, and accurately informed Plaintiff and class members that their PI had been compromised.

81.    A common question of law or fact is whether Defendant violated the law by failing to promptly notify Plaintiff and class members that their PI had been compromised,

82.    A common question of law or fact is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

83.    A common question of law or fact is whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur.

84.    A common question of law or fact is whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Personal Information of Plaintiff and class members.

85.    A common question of law or fact is whether Plaintiff and class members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct.

11

86.     A common question of law or fact is whether Plaintiff and class members are entitled to restitution as a result of Defendant's wrongful conduct.

87.     A common question of law or fact is whether Plaintiff and class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

### Allegations of Typicality

88.     Pursuant to Md. Rule 2-231(a)(3), Plaintiff's claims are typical of those of other Class Members because all had their Personal Information compromised as a result of the Data Breach due to Defendant's misfeasance.

### Adequacy of Representation

89.     Pursuant to Md. Rule 2-231(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the class members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other members of the class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the class and the infringement of the rights Plaintiff has suffered are typical of other class members.

90.     Plaintiff has retained counsel experienced in complex intellectual property litigation, information technology litigation, and class action litigation.

91.     Plaintiff has retained undersigned counsel Eric Menhart, who has litigated and tried complex technology cases in state and federal courts for nearly twenty years. Among other things, Menhart has been quoted or featured in numerous media outlets, including Forbes, Baltimore Sun, Washington Post, USA Today, CNN and Fox News on IT and IP legal issues. Menhart has also successfully litigated statutes such as the Stored Communications Act and the Computer Fraud and Abuse Act in federal trial and appellate courts.

12

92.     Counsel's curriculum vitae will be presented to the Court at an appropriate time.

**Predominance**

93.     Pursuant to Md. Rule 2-231(b)(2), Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that the Plaintiff's and Class Members' data was maintained and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Defendant's policies challenged herein apply to and affect Class Members.

94.     The data breach affected class members uniformly and Plaintiff's claims alleged herein are based on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**Superiority**

95.     Pursuant to Md. Rule 2-231(b)(3), Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant.

96.     Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

97.    The nature of this action and the nature of applicable laws make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and class members for the wrongs alleged.

98.    If the matter was not pursued as a class action Defendant would gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual class member with superior financial and legal resources.

99.    The costs of individual suits could unreasonably consume the amounts that would be recovered.

100.    Proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each class member to recover on the cause of action alleged.

101.    Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this instant litigation.

102.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, including its privacy policy, uniform methods of data collection, the consistent provisions of the relevant laws, and the ascertainable identities of class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

103.    Adequate notice can be given to class members directly using information maintained in Defendant's records.

104.    Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personal Information of class members, Defendant may continue to refuse to provide proper notification to class members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Petition.

14

105.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

106.     Likewise, under Md. Rule 2-231(c)(4), numerous issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

107.     One issue appropriate for certification is whether Defendant owed a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

108.     Another issue appropriate for certification is whether Defendant breached a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

109.     Another issue appropriate for certification is whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

110.     Another issue appropriate for certification is whether Defendant adequately, accurately and lawfully informed Plaintiff and class members that their Personal Information had been compromised.

111.     Another issue appropriate for certification is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

112.     Another issue appropriate for certification whether unauthorized parties obtained Class Members' Personal Information via the Data Breach.

113.    Another issue appropriate for certification is whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and class members.

114.    Another issue appropriate for certification is whether class members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I - Negligence

115.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

116.    Defendant and its selected third-party IT vendor had a duty to the Plaintiff to maintain data security measures consistent with statutory and industry standards.

117.    Defendant and its selected third-party IT vendor had a duty to the Plaintiff to design, maintain, or test security systems to ensure that Plaintiff's PI in their possession was adequately secured and protected.

118.    If Defendant chose to employ third-party IT vendors, Defendant had a duty to select vendors that were sufficiently vetted, competent, and capable of protecting PI.

119.    Defendant and its selected third-party IT vendor had a duty to the Plaintiff to implement processes that would detect a breach of its security systems in a timely manner.

120.    On information and belief, Defendant and its selected third-party IT vendor breached each of these duties, as evidenced by the events described in this complaint.

121.    Defendant and its selected third-party IT vendor knew or should have known of the risks inherent in collecting, maintaining, and storing PI and medical records of Plaintiff and the heightened risk of doing so without adequate security systems and protocols.

122.    Defendant and its selected third-party IT vendor owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PI in its possession, or the possession of its vendors, from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

123.    On information and belief, Defendant and its selected third-party IT vendor breached the above duty, as evidenced by the events described in this complaint.

124.    Defendant and its selected third-party IT vendor had a duty to prevent foreseeable harm to Plaintiff. This duty existed because Plaintiff and the class members were foreseeable and probable victims of inadequate security practices, whether based on Defendant's internal record-keeping or third-party IT vendor data storage.

125.    It was foreseeable that Plaintiff and the class members would be harmed by the failure to protect their PI because unauthorized actors routinely attempt to steal such information and use it for nefarious purposes.

126.    Defendant and its selected third-party IT vendor breached the duties it owed to Plaintiff and class members to keep their information secure.

127.    But for Defendant and its selected third-party IT vendor's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PI would not have been compromised.

128.    On information and belief, Defendant and its selected third-party IT vendor had numerous opportunities in advance of the breach to reasonably implement adequate cybersecurity measures, or ensure a vendor implemented adequate practices, as part of their duties to the Plaintiff, but failed to do so.

129.    On information and belief, Defendant and its selected third-party IT vendor failed

to maintain data security measures consistent with statutory and industry standards.

130.    On information and belief, Defendant and its selected third-party IT vendor failed to implement numerous measures recommended by the FBI as proactive preventative measures to maintain computer network security and avoid attacks, such as the one that resulted in the breach.

131.    Defendant and its selected third-party IT vendor failed to implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

132.    Defendant and its selected third-party IT vendor failed to enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

133.    Defendant and its selected third-party IT vendor failed to scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

134.    Defendant and its selected third-party IT vendor failed to configure firewalls to block access to known malicious IP addresses.

135.    Defendant and its selected third-party IT vendor failed to patch operating systems, software, and firmware on devices.

136.    Defendant and its selected third-party IT vendor failed to consider using a centralized patch management system.

137.    Defendant and its selected third-party IT vendor failed to set anti-virus and anti-malware programs to conduct regular scans automatically.

138.    Defendant and its selected third-party IT vendor failed to manage the use of

privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

139.    Defendant and its selected third-party IT vendor failed to configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needed to read specific files, the user should not have written access to those files, directories, or shares.

140.    Defendant and its selected third-party IT vendor failed to disable macro scripts from office files transmitted via email. As one example, Defendant likely failed to consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

141.    Defendant and its selected third-party IT vendor failed to implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

142.    Defendant and its selected third-party IT vendor failed to consider disabling Remote Desktop protocol (RDP) if it is or was not being used.

143.    Defendant and its selected third-party IT vendor failed to use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

144.    Defendant and its selected third-party IT vendor failed to execute operating system environments or specific programs in a virtualized environment.

145.    Defendant and its selected third-party IT vendor failed to categorize data based on

organizational value and implement physical and logical separation of networks and data for different organizational units.

146.    Defendant and its selected third-party IT vendor failed to conduct an annual penetration test and vulnerability assessment.

147.    On information and belief, Defendant and its selected third-party IT vendor failed to implement the measures recommended by the United States Cybersecurity & Infrastructure Security Agency to prevent and detect cyber-attacks, including the attack that resulted in the breach.

148.    On information and belief, Defendant and its selected third-party IT vendor failed to implement the measures recommended by the Microsoft Threat Protection Intelligence Team to prevent and detect cyber-attacks, including the attack that resulted in the breach.

149.    As a direct and proximate result of Defendant and its selected third-party IT vendor's negligence and breach of duties, Plaintiff sustained and will continue to sustain economic loss and other harms.

150.    Defendant and its selected third-party IT vendor owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant and its selected third-party IT vendor had a duty to prevent foreseeable harm to others.

151.    This duty existed because Plaintiff and Class Members were foreseeable and probable victims of inadequate security practices.

152.    In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their Personal Information, because hackers routinely attempt to

steal such information and use it for nefarious purposes, but Defendant and its selected third-party IT vendor also knew that it was more likely than not Plaintiff and other Class Members would be harmed, and in fact, suffered harm as identified above.

153.    Defendant and its selected third-party IT vendor breached the duties they owed to Plaintiff and Class Members to keep their information secure. But for Defendant and its selected third-party IT vendor's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, and without any wrongdoing on the part of Plaintiff or Class Members, Plaintiff's and Class Members' Personal Information would not have been compromised.

154.    Plaintiff relies on the doctrines of actual and apparent agency, *res ipsa loquitur*, and *respondeat superior* where applicable.

155.    Defendant and its selected third-party IT vendor are further subject to negligence per se based on their violations of Maryland statutes.

156.    Defendant's and its selected third-party IT vendor negligence caused Plaintiff and Class Members to suffer harm as described above and actual damages in an amount to be determined at trial.

## Count II – Violation of Maryland Personal Information Privacy Act ("PIPA")

## Md. Com. Law §§ 14-3503 and 14-3504

157.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

158.    Per Maryland §14–3501(e)(1), "Personal Information" (PI) means: (i) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when the data elements are not encrypted, redacted, or otherwise protected by another method that renders the information unreadable or unusable: 1. A Social

21

Security number, an Individual Taxpayer Identification Number, a passport number, or other identification number issued by the federal government; 2. A driver's license number or State identification card number; 3. An account number, a credit card number, or a debit card number, in combination with any required security code, access code, or password, that permits access to an individual's financial account; 4. Health information, including information about an individual's mental health; 5. A health insurance policy or certificate number or health insurance subscriber identification number, in combination with a unique identifier used by an insurer or an employer that is self-insured, that permits access to an individual's health information.

159.    As described herein, Defendant and its selected third-party IT vendor failed to implement and maintain reasonable security procedures as required by Maryland law. *See* Md. Com. Law §14–3503(a).

160.    Defendant and its selected third-party IT vendor were legally required to "implement and maintain reasonable security procedures and practices" to "protect personal information from unauthorized access, use, modification, or disclosure."

161.    As described herein, the fact Defendant and its selected third-party IT vendor failed to prevent or even reasonably detect the data breach constituted a violation of their requirement to have reasonable security procedures under §14–3503.

162.    As evidenced by the results, whatever security practices and procedures Defendant and its selected third-party IT vendor had in place, they were not appropriate to the nature of PI maintained, nor the nature of Defendant's size, nor its operations.

163.    Further, SMH violated PIPA because it did not provide notice of the breach of its security in accordance with the requirements of §14–3504.

164.    The incident as described herein constitutes a breach of a security system under

§14–3504.

165.     Maryland Law requires that "notification . . . shall be given as soon as reasonably practicable, but not later than 45 days after the business discovers or is notified of the breach of the security of a system." *See* Md. Com. Law §14–3504(b)(3).

166.     The notice provided by Defendant did not comply with this requirement. The notice received by Plaintiff was dated August 1, 2025, and the same letter admits that SMH had notice of the "cybersecurity incident" as early as March 15, 2025. *See* Exhibit #1.

167.     The notice provided by Defendant was sent approximately one hundred and forty-five days (145) after notice of the breach, in violation of the law.

168.     None of the communications following the breach, from SMH to Plaintiff or members of the class, were delivered timely. Defendant's failure to timely notify Plaintiff and members of the class constitutes a violation of the statute.

169.     On information and belief, SMH also failed to provide adequate or timely notice to the Maryland Attorney General of the incident, as required by §14–3504(h). This constitutes a violation of the statute.

170.     Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

**Count III – Action for Violation of Maryland Consumer Protection Act ("CPA")**

**Md. Com. Law §§ 13-301**

171.     Plaintiff realleges and incorporates by reference each and every allegation set forth above.

172.     SMH has engaged in unfair or deceptive trade practices, in violation of Maryland Code, Commercial Law Article §§ 13-301 and 13-303.

173.     Under Maryland Code, Commercial Law Article §14–3508, a violation of MD PIPA is an unfair or deceptive trade practice as defined in the Maryland Consumer Protection Act.

174.     SMH's violations of MD PIPA, as described above, therefore are unfair and deceptive trade practices and violations of § 13-301.

175.     Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

176.     Plaintiff should also be awarded attorneys' fees as authorized by Md. Com. Law § 13-408(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief:

A.  An Order certifying the instant matter as a class action;

B.  Injunctive relief, precluding Defendant from further engaging in activity complained of herein;

C.  Declaratory relief, stating that Defendant is liable to Plaintiff, and any putative class, for the actions complained of herein;

D.  An award for damages, in an amount to be proven at trial, of any and all statutory damages, treble damages, punitive damages or any other damages that may be available to Plaintiff under any statute or cause of action; including, but not limited to any statute set forth herein;

E.  An award of attorney's fees, pursuant to any applicable statute allowing or requiring such fees, or pursuant to common law; including, but not limited to, statutes cited herein;

F.  An award of reasonable costs and litigation expenses.

G.  An award of pre-judgment and post-judgment interest, to the extent allowable; and

H.  Such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, pursuant to Md. Rule 2-325, respectfully demands a trial by jury of all issues so triable.

* * *

Respectfully submitted,

/s/ *Eric Menhart*
Eric Menhart, Esq
Lexero Law
80 M St SE, Ste 100
Washington, DC 20003
Phone: 855-453-9376 Ext. 101

*Attorney for Plaintiff and Proposed Class*

IN THE CIRCUIT COURT FOR <u>St. Mary's County</u>
                                                    <u>(City/County)</u>

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

***Plaintiff:*** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

   ***Defendant:*** You must file an Information Report as required by Rule 2-323(h).

### *THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT    CASE NUMBER **C18CV25599**
                                                                    (Clerk to insert)

**CASE NAME:** Abraham                      vs.    St. Mary's Hospital of St. Mary's County, Inc.
                      Plaintiff                              Defendant

**PARTY'S NAME:** Ilana Abraham                          PHONE:

**PARTY'S ADDRESS:** c/o Lexero Law, 80 M St SE, Ste 100, Washington, DC 20003

**PARTY'S E-MAIL:**

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** Eric Menhart, Esq.          PHONE: 202-904-2818

**PARTY'S ATTORNEY'S ADDRESS:** Lexero Law, 80 M St SE, Ste 100, Washington, DC 20003

**PARTY'S ATTORNEY'S E-MAIL:** Eric.Menhart@Lexero.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No  If yes, Case #(s), if known:

**ANTICIPATED LENGTH OF TRIAL?:** ____ hours  5  days

### PLEADING TYPE

**New Case:** ☒ Original        ☐ Administrative Appeal    ☐ Appeal
**Existing Case:** ☐ Post-Judgment    ☐ Amendment
***If filing in an existing case, skip Case Category/ Subcategory section – go to Relief section.***

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY *(Check one box.)*

**TORTS**
☐ Asbestos
☐ Assault and Battery
☒ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt:
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☒ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☒ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☒ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☒ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☒ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☒ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☒ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☐ Liability is not conceded, but is not seriously in dispute.    ☒ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☒ Over $100,000

☐ Medical Bills $ _____    ☐ Wage Loss $ _____    ☐ Property Damages $ _____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| A. Mediation | ☒ Yes ☐ No | C. Settlement Conference | ☒ Yes ☐ No |
|---|---|---|---|
| B. Arbitration | ☒ Yes ☐ No | D. Neutral Evaluation | ☒ Yes ☐ No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*

### *(Case will be tracked accordingly)*

☐ 1/2 day of trial or less    ☐ 3 days of trial time

☐ 1 day of trial time    ☒ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of    ☐ **Standard** - Trial within 18 months of

Defendant's response    Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❑ **Expedited** - Trial within 7 months of Defendant's response

❑ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ❑ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❑ Civil-Short | Trial 210 days from first answer. |
| ❑ Civil-Standard | Trial 360 days from first answer. |
| ❑ Custom | Scheduling order entered by individual judge. |
| ❑ Asbestos | Special scheduling order. |
| ❑ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ❑ Tax Sale Foreclosures | Special scheduling order. |
| ❑ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ❑ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❑ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❑ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❑ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

09/19/2025
_____
Date

80 M St SE
_____
Address

Washington          DC      20003
_____
City          State      Zip Code

/s/Eric Menhart, Esq.          Maryland Barred
_____
Signature of Attorney / Party      Attorney Number

Eric Menhart, Esq.
_____
Printed Name



**CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND**

41605 Courthouse Drive
PO Box 676, Leonardtown, Maryland, 20650

Main: 301-475-7844
Civil Dept.: Ext. 4562
Criminal/Juvenile/Jury Dept.: Ext. 4564
Case Management Office: Ext. 4101/4102
MD Toll Free: 800-988-5052
MD Relay Service: 711

**To:**   ERIC JAMES MENHART
10 G Street N E
Suite 710
Washington, DC, 20002

| | |
|---:|---:|
| **Case Number:** | C-18-CV-25-000599 |
| **Invoice Number:** | 857436 |
| **Date Due:** | 10/01/2025 |

**ILANA ABRAHAM VS. ST. MARY S HOSPITAL OF ST. MARY S COUNTY, INC.**

Date: 10/3/2025

## INVOICE

Our records indicate that you have not satisfied your judicially assessed costs to the court. This payment is past due. Our records indicate that on 10/01/2025 the amount due was $ 10.00 for the case number shown above. If you believe that this information is not correct, you need to contact the court within the next five (5) days, otherwise, please mail or bring your check, money order, or bring cash with this notice to the Circuit Court located at the address shown above.

If the amount due is not received within 10 days, the court will take further action to effect collection.

Mail or bring a copy of this notice and a check or money order, payable to **Circuit Court**, or bring cash to the address shown above.  Some circuit courts accept payment by credit card.  Contact the court location listed above to confirm the ability to pay by credit card.

### IF PAYMENT HAS ALREADY BEEN SENT, DISREGARD THIS NOTICE.

E-FILED; Saint Mary's Circuit Court
Docket: 10/8/2025 1:00 PM; Submission: 10/8/2025 1:00 PM
Envelope: 23286986

# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

# 94001301093551057541147

Copy    **Add to Informed Delivery (https://informeddelivery.usps.com/)**

## Latest Update

Your item was picked up at a postal facility at 9:12 am on September 23, 2025 in LUTHERVILLE TIMONIUM, MD 21093.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

**Delivered**
**Delivered, Individual Picked Up at Postal Facility**
LUTHERVILLE TIMONIUM, MD 21093
September 23, 2025, 9:12 am

**Out for Delivery**
LUTHERVILLE TIMONIUM, MD 21093
September 23, 2025, 7:11 am

**Arrived at Post Office**
LUTHERVILLE TIMONIUM, MD 21093
September 23, 2025, 7:00 am

**Arrived at USPS Facility**
LUTHERVILLE TIMONIUM, MD 21093
September 23, 2025, 6:52 am

**Departed USPS Regional Facility**
LINTHICUM HEIGHTS MD DISTRIBUTION CENTER
September 23, 2025, 6:03 am

Exhibit #1

USPS.com® - USPS Tracking® Results

https://tools.usps.com/go/TrackConfirmAction?tLabels=94001301093...

**Arrived at USPS Regional Facility**

LINTHICUM HEIGHTS MD DISTRIBUTION CENTER

September 23, 2025, 1:59 am

**In Transit to Next Facility**

September 23, 2025, 1:25 am

**Departed USPS Regional Facility**

SOUTHERN MD DISTRIBUTION CENTER

September 23, 2025, 12:55 am

**Arrived at USPS Regional Facility**

SOUTHERN MD DISTRIBUTION CENTER

September 23, 2025, 12:04 am

**Accepted at USPS Origin Facility**

WASHINGTON, DC 20003

September 22, 2025, 10:49 pm

**Shipping Label Created, USPS Awaiting Item**

WASHINGTON, DC 20003

September 22, 2025, 11:58 am

**Hide Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates** ⌄

**USPS Tracking Plus®** ⌄

**Product Information** ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

**Exhibit #1**

9/25/2025, 11:24 PM

https://tools.usps.com/go/TrackConfirmAction?tLabels=94001301093...

# Need More Help?

Contact USPS Tracking support for further assistance.

| FAQs |
| --- |

Exhibit #1



**CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND**
41605 Courthouse Drive
PO Box 676, Leonardtown, Maryland, 20650

Main: 301-475-7844
Civil Dept.: Ext. 4562
Criminal/Juvenile/Jury Dept.: Ext. 4564
Case Management Office: Ext. 4101/4102
MD Toll Free: 800-988-5052
MD Relay Service: 711

**To:**    ERIC JAMES MENHART
10 G Street N E
Suite 710
Washington, DC, 20002

| | |
|---|---|
| **Case Number:** | C-18-CV-25-000599 |
| **Invoice Number:** | 857436 |
| **Date Due:** | 10/01/2025 |

ILANA ABRAHAM VS. ST. MARY S HOSPITAL OF ST. MARY S COUNTY, INC.

Date: 10/3/2025

## INVOICE

    Our records indicate that you have not satisfied your judicially assessed costs to the court. This payment is past due. Our records indicate that on 10/01/2025 the amount due was $ 10.00 for the case number shown above. If you believe that this information is not correct, you need to contact the court within the next five (5) days, otherwise, please mail or bring your check, money order, or bring cash with this notice to the Circuit Court located at the address shown above.

    If the amount due is not received within 10 days, the court will take further action to effect collection.

    Mail or bring a copy of this notice and a check or money order, payable to **Circuit Court**, or bring cash to the address shown above. Some circuit courts accept payment by credit card. Contact the court location listed above to confirm the ability to pay by credit card.

    **IF PAYMENT HAS ALREADY BEEN SENT, DISREGARD THIS NOTICE.**

2025 OCT 15 PM 12: 33
CLERK OF CIRCUIT COURT
ST. MARY'S COUNTY, MD
FILED



US POSTAGE ᴀɴᴅ PITNEY BOWES

ZIP 20650 $ 000.74⁰
02 7W
0008041601 OCT. 03. 2025

CAPITAL DISTRICT
3 OCT 2025 PM 4
FIRST-CLASS

Clerk of the Circuit Court
For St. Mary's County
P.O. Box 676
Leonardtown, MD 20650



RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

2025 OCT 15 PH 12:33

CLERK OF CIRCUIT COURT
ST. MARY'S COUNTY, MD
FILED



**CIRCUIT COURT for ST. MARY'S COUNTY, MARYLAND**
41605 Courthouse Drive PO Box 676
Leonardtown Maryland 20650

Main: 301-475-7844
Civil Dept.: Ext. 4562
Criminal/Juvenile/Jury Dept.: Ext. 4564
Case Management Office: Ext. 4101/4102
MD Toll Free: 800-988-5052
MD Relay Service: 711

To:  **ERIC MENHART, ESQ.**
    **LEXERO LAW**
    **80 M STREET, SE**
    **SUITE 100**
    **WASHINGTON DC 20003**

                              **Case Number:**   C-18-CV-25-000599
                              **Related Case Number:**

**ILANA ABRAHAM VS. ST. MARY S HOSPITAL OF ST. MARY S COUNTY, INC.**

E-FILED; Saint Mary's Circuit Court
Docket: 10/22/2025 1:32 PM; Submission: 10/22/2025 1:32 PM
Envelope: 23474952

# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ILANA ABRAHAM, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>ST. MARY'S HOSPITAL OF ST. MARY'S COUNTY, INC.,<br><br>        Defendant. | Case No. 8:25-cv-3479<br>_____<br><br>Removed from the Circuit Court for St. Mary's County, Maryland, Case No. C-18-CV-25-000599 |

## NOTICE OF REMOVAL

Defendant St. Mary's Hospital of St. Mary's County, Inc. ("SMH") hereby removes this action currently pending in the Circuit Court for St. Mary's County, Maryland to the United States District Court for the District of Maryland, on the grounds that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. In support thereof, SMH states as follows:

## NATURE OF REMOVED ACTION

1)    On September 22, 2025, Plaintiff Ilana Abraham filed a Class Action Complaint against SMH asserting claims for negligence and violation of the Maryland Personal Information Privacy Act and Consumer Protection Act in connection with a data security incident. The Incident involved unauthorized access to patient data hosted by Oracle Health (formerly Cerner Corporation)—an electronic-health-record vendor—on behalf of its clients, including SMH. (Compl. ¶ 16; *see also* Ex. 1 to Complaint.)

2)      Following notice of the Incident, numerous plaintiffs filed class action complaints in multiple jurisdictions raising identical claims against both Oracle Health and its clients who provided notice of the Incident. To date, 32 actions bringing claims regarding the Incident against Oracle Health and its clients have been consolidated in the Western District of Missouri before Chief Judge Beth Phillips. *See In re: Cerner/Oracle Data Breach Litig.*, Case No. 4:25-cv-00259-BP, ECF 21, 25, 31, 34, 42, 43, 45–47, 54, 56, 58, 60, 65.

3)      Plaintiff's Complaint in the State Court Action is attached hereto as **Exhibit A**, and a true and correct copy of the state court docket and all process, pleadings, and orders served on SMH in the State Court Action is attached hereto as **Exhibit B**.

GROUNDS FOR REMOVAL UNDER 28 U.S.C. § 1332(d)

4)      "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5)      This action is removable under 28 U.S.C. § 1441(a) because this Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Pursuant to CAFA, where a proposed class involves 100 or more class members, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A) and (d)(5).

6)    "[N]o antiremoval presumption attends cases invoking CAFA. . . . [Instead,] CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

7)    Each of the CAFA requirements is met here.

**A.    This is a class action with more than 100 putative members.**

8)    Plaintiff seeks to represent a nationwide putative class of "over ten thousand (10,000) individuals whose Personal Information may have been improperly accessed in" the Incident. (Ex. A, Compl. ¶ 72.)

9)    Thus, the proposed class meets the 100-person CAFA requirement.

**B.    Minimal diversity exists.**

10)    Minimal diversity under CAFA exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

11)    A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c).

12)    SMH is incorporated in Maryland and maintains its principal place of business in Maryland. Thus, SMH is a citizen of Maryland.

13)    Plaintiff's proposed class includes citizens from states other than Maryland. Indeed, Plaintiff seeks to represent a nationwide putative class of all persons whose personal information was accessed or acquired without authorization during the Incident (Ex. A, Compl. ¶¶ 69, 72) and the Incident involved individuals from numerous states.

14)    Because SMH and members of the proposed class are citizens of different states, CAFA's minimal diversity requirement is met.

**C.    The amount in controversy is satisfied.**

15)    Evidence is not required to establish the amount in controversy in a notice of removal—instead, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Sayre v. Westlake Servs., LLC*, 2015 WL 4716207, at *6 (D. Md. Aug. 7, 2015) (citing *Dart Cherokee*, 574 U.S. at 89).

16)    Although SMH denies Plaintiff's allegations—and fully reserves its rights to contest their adequacy—Plaintiff's request for damages, injunctive and declaratory relief and attorney's fees on behalf of herself and a nationwide class is sufficient to exceed the jurisdictional threshold. Indeed, CAFA permits courts to aggregate the claims of the individual putative class members "to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

17)    Here, Plaintiff alleges the value of her claims "exceeds $25,000" and that her claims are "typical of those of other Class Members." (Ex. A, Compl. ¶¶ 2,

88.) Plaintiff further alleges the class is comprised of over 10,000 individuals. (Ex. A, Compl. ¶ 72.) Thus, the amount in controversy exceeds the CAFA threshold. *See, e.g., Skipper v. CareFirst BlueChoice, Inc.*, 2023 WL 2410858, at *3 (D. Md. Mar. 8, 2023) ("The amount in controversy is calculated by multiplying the number of potential class members by the average damages each class member sustained."); *In re Blackbaud, Inc.*, 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) ("Given Peterson's alleged damages of at least $50,000, Peterson's assertion that his claims are typical of the class, and the purported class of thousands, the original Complaint satisfies CAFA's five (5) million-dollar amount-in-controversy requirement."); *Shaver v. Ford Motor Co.*, 768 F. Supp. 2d 1235, 1236–37 (S.D .Fla. 2011) (plaintiff's class action complaint pleading that her claims exceeded the $15,000 jurisdictional limit in Florida state court was sufficient to meet the CAFA amount-in-controversy requirement where the class consisted of 100,000 people— "[T]he requisite amount of controversy of $5,000,000.00 is evident on the face of the complaint as 100,000 times $15,000.00 exceeds $5,000,000.00.").

18)    Plaintiff also seeks injunctive relief and attorney's fees—both of which are properly included in the calculation of, and further increase, the amount in controversy. *See Stewart v. Truist Fin.*, 2024 WL 2977886, at *4 n.2 (D. Md. June 13, 2024) (attorney's fees are included in the amount in controversy if available under a statute like the Maryland Consumer Protection Act); *Johnson v. Think Computer Corp.*, 2023 WL 3742990, at *5 (D. Md. May 31, 2023) ("[R]equests for injunctive relief must be valued in determining whether the plaintiff has alleged a

sufficient amount in controversy. The value of an injunction for amount in controversy purposes is ascertained by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant.").

19)    Because Plaintiff is plausibly seeking in excess of $5,000,000 in damages and other relief related to the individual and proposed class-wide claims, the amount in controversy is satisfied.

20)    This matter, therefore, satisfies all requirements of 28 U.S.C. § 1332(d) and properly belongs in federal court pursuant to CAFA.

### VENUE IS PROPER

21)    This Court is in the judicial district and division embracing the place where Plaintiff filed the State Court Action and where it is pending. Specifically, the United States District Court for the District of Maryland embraces the Circuit Court for St. Mary's County, Maryland. *See* 28 U.S.C. §§ 1441, 1446.

### TIMELINESS OF REMOVAL

22)    Plaintiff served her Complaint on September 24, 2025.

23)    SMH filed this Notice within 30 days after service of the Complaint. Thus, removal is timely. *See* 28 U.S.C. § 1446(b); *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999).

### PRAYER FOR REMOVAL

WHEREFORE, SMH respectfully requests that the above action now pending in the Circuit Court for St. Mary's County, Maryland be removed to the United States District Court for the District of Maryland.

Dated:          October 22, 2025          Respectfully submitted,


                                          **BAKER & HOSTETLER LLP**

                                          _/s/ Elizabeth A. Scully_
                                          Elizabeth A. Scully (27402)
                                          1050 Connecticut Avenue, NW, Suite 1100
                                          Washington, D.C. 20036
                                          Tel: (202) 861-1500
                                          Email: escully@bakerlaw.com

                                          _Attorney for Defendant_

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, a true and correct copy of the foregoing document was served via email and U.S. mail upon the following:

Eric Menhart, Esq.
Lexero Law
80 M St SE, Ste 100
Washington, DC 20003
Eric.Menhart@Lexero.com

*Attorney for Plaintiff and the Putative Class*

*/s/ Elizabeth A. Scully*
*Counsel for Defendant*

E-FILED; Saint Mary's Circuit Court
Docket: 10/22/2025 1:32 PM; Submission: 10/22/2025 1:32 PM
Envelope: 23474952

## IN THE CIRCUIT COURT FOR ST. MARY'S COUNTY, MARYLAND

ILANA ABRAHAM, individually and
on behalf of all others similarly
situated,

     Plaintiff,

v.

ST. MARY'S HOSPITAL OF ST.
MARY'S COUNTY, INC.,

     Defendant.

_____/

Case No.: C-18-CV-25-000599

### NOTICE OF FILING OF NOTICE OF REMOVAL

Defendant hereby gives notice that this case was timely removed to the United States District Court for the District of Maryland on October 22, 2025. Accordingly, no further proceedings should be conducted in this matter in the St. Mary's County Circuit Court. A copy of the as-filed Notice of Removal is attached as Exhibit A.

Dated: October 22, 2025

By: _/s/ Elizabeth A. Scully_
Elizabeth A. Scully (27402)
1050 Connecticut Avenue, NW, Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Email: escully@bakerlaw.com

_Attorney for Defendant_

### CERTIFICATE PURSUANT TO MD RULE 1-313

I hereby certify that I am admitted to practice law in the State of Maryland.

_/s/Elizabeth A. Scully_
Elizabeth A. Scully

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, a true and correct copy of the foregoing

document was filed electronically and served via email and U.S. mail upon the

following:

Eric Menhart, Esq.
Lexero Law
80 M St SE, Ste 100
Washington, DC 20003
Eric.Menhart@Lexero.com

*Attorney for Plaintiff and the Putative Class*

/s/ *Elizabeth A. Scully*
*Counsel for Defendant*